Billington et al versus HCL Technologies et al. And I see we have Mr. Kachin. Yes, your honor. Good morning. Sir, three minutes for rebuttal. Good morning. You can begin whenever you're ready. Yes, your honor. Thank you. May it please the court. This case involves a business model notable for the scope and audacity of this illegality. There are two types of fraud at issue on this appeal. The first is the underpayment of H-1B wages. And the second is the use of L-1 and B-1 visas in lieu of H-1B visas. In dismissing the relator's reverse FCA claims, the district court made three distinct errors. First, the court concluded that an obligation requires a duty to pay the government immediately payable at the time of the fraud. That's not the law. An obligation requires an established duty, whether or not fixed, that's established by, for example, a regulation or a fee-based relationship. It's the existence of the duty that matters and not the timing of the payment that's owed to the government. Consider the Conagra case. Conagra involved the alteration. Now you're talking about the fee situation, the applying to the different fees. You have to keep it straight. One is an underpayment of wages. That's not what you're talking about now. Now you're talking about the use of the cheaper fees. Your Honor, I think that the district court's decision would apply, the incorrectness applies to both. The district court reasoned both with respect to underpayment of wages. Well, the underpayment of wages, those wages were not owed to the government. Those wages were owed to employees. The underpayment of wages- So there was an obligation to pay full wages to the employees, but the employees would be plaintiffs under those circumstances. Not the- Judge, by underpaying the wages, what HCL did, by extension of both the regulations at issue in this case and the tax law, is it underpaid taxes? I would like to- An obligation that isn't directly on behalf, isn't in favor of the government, but is in the favor of an employee can become an obligation in favor of the government, essentially. The natural consequence of the fraud at issue here with respect to underpayment of wages. Well, that's where Judge Miriam drew the line, that's all. She said that's what this was doing to attenuate. Judge, I would like to refer you to subsection C2 of the regulation at issue here. How can you have established duty to pay taxes on wages that were never paid? That is pretty attenuated, right? How can you consider that to be an established duty? I agree with you, and it's clear from the statute that the amount may not be fixed, but you can determine that later. But how can you have an established duty to pay taxes on wages that were never paid? Judge, wages were paid. They were underpaid. Right. And so- But the tax you'd be seeking to recruit would be on wages that were never paid, right? Well, I mean, but that's what the- No court has ever held that that type of attenuated connection would constitute an established duty, right? That's, Judge, I respect- Suppose a corporation has in its bylaws fixed compensation for an executive. And ultimately, it turns out that the board decides that they're not going to pay the executive. The $20 million, that would be, they'd be obliged to pay under the corporation's documents. But instead, we're going to pay them $500,000. The government would have a claim for the full amount for taxes? Judge, under the False Claims Act? Yeah. There are issues about the economic relationship between the government and a defendant. Wait, you want to say where the $20 million was coming from? She said this was too attenuated. The wages that were paid, taxes were paid on it. Think about the Frye case from the northern district of Texas, where the defendant in that case had an obligation to seek reimbursement. It never did. It never sought the reimbursement. And as a result, the government was harmed. That is exactly the same issue. No, but the reimbursement was owed there. There was no question that the reimbursement was owed. But the higher wages, and by extension, the higher taxes are owed in this case. Again, I would like to direct you- Wouldn't under there, they made the argument that if you had a federal contractor underpaying FLSA wages, then is it your position to bring a False Claims Act against a federal contractor for not paying taxes on the wages it should have paid under the FLSA? Judge, we do cite federal contractor cases in our reply brief. But I think that what's critical in the False Claims Act is that there has to be an economic relationship between the government and the defendant. And there has to be other things like, yes, I enter. Can you go back to the- Go ahead, Judge Parker. Exactly what kinds of taxes are you talking about? Are you talking about payroll taxes that the employer pays or taxes that the employee would pay? It is the payroll taxes that the employer pays. And if you look at subsection C2, that's of the regulation at issue. That's- Are these taxes that are withheld? They're taxes that are withheld. Withheld by the employer. By the employer. And then you would be paid on it. By regulation, those taxes that are withheld are calculated into whether the employer is satisfying its required wage obligation. Those taxes, again, subsection C2, satisfaction of required wage obligation, encompasses both the amount the employee receives in cash and the withholding of taxes. That's exactly why in the HCT settlement that we referenced in our opening brief, that when an ALJ determined that there was an underpayment of wages, the ALJ required back pay, be paid, in addition to withheld taxes. So all the taxes we're talking about are taxes that are owed, we're putting aside for a moment, who pays them, are owed by the employee. Some are withheld, there may have been underwithholding, and we may have a tax bill, but these are all taxes that accrue as a consequence of the salary that was paid. We're not talking about any separate taxes that the employer would pay by virtue of having these folks on the payroll. They are taxes that attach to the salary and that are withheld by the employer. Those are the taxes that are paid. And the natural consequence of the underpayment of the wages in this case, is that by virtue of underpaying employees, the government received less in taxes. And if you look at the Frye case, if you look at the Merck-Medco case, if you look at the Grubea case, all that we cite, those are instances where, when the foreseeable consequence, the natural predictable effect of the fraud at issue is to reduce amounts paid to the government. Your response to the argument that the tax bar comes into play, and that it states that the agency does, quote, does not apply to claims, records, or statements made under the Internal Revenue Code. Correct. 1986. In other words, the collection of taxes is the province of the IRS. And the FCA doesn't reach that. We're not seeking the collection of taxes. What you're saying is missing. What we're saying is, was there an- Taxes that should have been paid, and they paid the higher wages. And why isn't it covered by the tax bar? Because the strict language of the tax bar, we are not claiming false records or statements or claims made to the IRS. We're not saying that the IRS has authority here. The only thing that we're saying is that the government that- The IRS collects taxes. That's where the taxes are paid. We're not collecting that. We're not seeking taxes. We're seeking statutory penalties because the fraud at issue here reduced the obligation to pay. It was material to the obligation to pay. When you look at the strict language of the False Claims Act, it clearly covers this instance. I would refer you to the SEC versus Wiley case that we decided in reply. There, the defendants had defrauded and engaged in securities violations, defrauded the SEC. But the measure of harm to the government was measured by lost taxes, but they weren't seeking lost taxes. The underpayment doesn't violate any tax law, right? Correct. No tax law is violated. The IRS does not have jurisdiction to police this. What's your claim for the taxes? What's it based on? The claim is that HCL had an obligation to pay the required wage. HCL willfully underpaid the wages that was required by extension, by natural effect of the tax laws that reduced what the payments owed to the government. You're talking about an obligation that's owed under the tax laws to the government. How can you run away from that? The obligation does not arise in the tax law. The obligation arises in the immigration regulations, the Department of Labor regulations. To pay taxes is something that, to pay higher wages is a problem for the Department of Labor, and they could enforce that in various ways. But arising from that, derivative of that, is the obligation to pay taxes, which is a revenue code matter, right? How is the obligation to pay taxes, which is what we're talking about, not the revenue code matter? Because the fraud at issue here reduces the obligation to pay the required wage. And so how is it that the Department of Labor and the HCT settlement, for example, can require that taxes be paid for underpayment? How is it with a DOJ- Power and settlements, as you know, I mean, settlements require lots of different things. But the obligation that they would be referring to in that settlement would be the obligation to pay taxes under the IRS code. Your Honor, I would refer you to subsection C2 and look at how the required wage is calculated. It's payment to employees, cash in hand, and taxes that are withheld pursuant to the Internal Revenue Code. And so that's the obligation. That section is referred to as satisfaction required. What's your argument on the other one, the use of the cheaper visas? So, Your Honor, HCL had an obligation to apply for the more expensive H1B visas if it's bringing in folks who are going to do work that's covered by an H1B visa. That obligation, it had that obligation. Because it sought L1 visas for work that it knew required H1B work, the government is out visa fees. The same thing applies to B1 visas. HCL had an obligation to apply for H1B visas for individuals who are going to do H1B work. And so by virtue of the fraud at issue in this case, when it seeks L1 visas for H1B work, the government is out visa fees. Don't you have to, just one little point, and that is, there's a lottery system for getting the HB1 visas. And so that hurdle, you can't necessarily, you can't argue that it's inevitable that an HB1 visa would have been granted for these people. Correct. So if you can't do that, where's the obligation? How is it fixed? To respond to that, your honor, in Conagra, there was the alteration of export certificates. And there was not an obligation to pay, there was not a timing of payment, there wasn't a payment due unless an inspector down the road concluded that the export certificates had sufficient errors to require a replacement, the lieu of certificate.  But the fact that there is future government action does not obviate or doesn't eliminate the obligation to seek H1B visas in the first instance. The second thing is, under the second prong of the False Claims Act, you no longer need a false statement of record. So when HCL brought in, had folks on L1s and B1 visas, had them do work required by an H1B visa, it knew that it was reducing an obligation to pay. It would be actionable. Thank you, Mr. Koch. Okay. You have three minutes in rebuttal. Thank you, thank you, Judge. We'll hear from Mr. Shenberg. Thank you, your honor. May it please the court. The key question running through the reverse false claims cases is straightforward. Did an event that creates an obligation to pay the money at issue to the government actually occur? Just as a standard false claims key TAM action is a limited tool to recoup money actually taken from the government. A reverse false claims action is only a tool to collect money actually owed to the government. It's not a means for addressing breaches of any other legal obligations. The tax code says only that HCL's tax payment obligation is based on salaries actually paid to employees. But plaintiff's claim is not about that at all. Plaintiff's claim depends on expanding reverse false claims actions to collecting taxes that would have become owed if HCL had paid the salaries plaintiffs say they should have paid under the immigration regulations. That crosses the line from collecting on obligations actually owed to the government to trying to enforce other obligations. Under plaintiff's view, any claim that an employee was short changed wages, here that's the immigration regulations, but it could be under any statute or contract. Any claim that an employee was short changed wages would simultaneously give rise to a reverse false claims action. Nothing supports that kind of expansion. And plaintiff's claimed authorities are easily dismissed. But didn't your client owe the government money for the visas that it was actually applying for? So in terms of the visas, which is a different issue. But in terms of the visas, there's no claim here that HCL did not pay for the visas that it actually applied for and received. The claim is that they applied for L1 and B1 visas when they had, at that moment, that they were applying, the intent to really use these individuals for purposes of what would be an H1B visa. So the argument is that the misconduct at the time, if they had been truthful in the application, that they would have had to pay the higher fee for the H1B visa. And that was conditional, obviously, on winning the lottery, but the argument is that that fee should have been paid. That's the claim. Yes, it certainly is. So why isn't that, if you are really intending to use these workers for H1B purposes, why isn't it an established duty that that's the fee you should pay for an H1B visa? Because the claim here is not rooted in any regulation that says you have to pay for a visa that you never applied for. The claim is that HCL violated the terms of the visas that they actually did pay for. The claim is that you misled the government. You made false statements to the government. Understood. By applying for B1 and L1 visas when you knew what you wanted and what you intended to use is what you get when you, if you'd successfully applied for an H1B visa. That is the claim. But employing a person beyond the terms of the visa actually issued, it does have consequences, and it should have consequences. But going back and paying- It's different from all the tariff cases that say if you mismark shoulds, then you owe the government what you should have paid if they were properly marked. That's essentially what they're saying here. If you had properly marked on the application what your clients were intending on doing, you would have owed a higher fee. Let's talk about the Conagra case, because that's the one that- Well, it's not just the Conagra case, but answer, I'm interested in the answer to Judge Bianco's question. Yes, the answer is that different regulations, different statutory schemes, have a different point at which the obligation to pay arises. So in Conagra, in which they rely chiefly, there's a lot of discussion about when does the duty to buy- Do you have a duty to pay the fee at the time you make the application? You have a- Do you have a duty to pay the fee later? When you make the application, you have a duty to pay the fee for the application. You have a duty to pay the fee that you apply for. There's no sense, there's nothing in the immigration laws that says, well, you have a duty to pay the fee that somebody says you should have applied for. Only the one that you actually applied for. You should have applied for. Yeah, that's right. And so you can say that they may have broken the immigration laws if they applied for, knowingly applied for a wrong visa. Now, of course, we can say that they can't even establish that under Rule 8 or Rule 9 that they're pleading. But the point is, there is only an established duty to pay for the visa you actually pay for. If you apply for the wrong visa, even if you knowingly apply for the wrong visa, there are consequences for that. That's not- But one of the consequences is not paying for the other visa. Wait, just a second. I mean, the problem here is, from my perspective, is that you apply for a visa you know you weren't entitled to. And so it doesn't seem to me that you should be able to escape the consequences of that by saying, well, I got the visa which I intentionally wrongfully applied for. The only obligation in the immigration regulations to pay for anything is to pay for the visa that you actually apply for. Now, can I ask a question on that? I understand what your point is. When is the fee payable? Is it before the H-1? Is it before or after the lottery process? Yes, that goes to the heart of this in some ways, Your Honor, because it's pure speculation that HCO could have even gone back and applied for it, or ever could, because- What I'm saying, what I'm saying is, is the fee upon the receipt of the H-1 visa, or is it upon the application, you have to submit, pay the fee when you apply, and the government gets to keep that. Whether or not the lottery comes up with the- You only pay for the H-1B visa if you win the lottery. If you win the lottery. That's correct. And then you file the petition for the H-1B visa, and only then do you pay. So it's pure speculation that they could have even paid the fee if they wanted to, because they would have had to win the lottery. Especially under regulation where if you win licenses for truck drivers, and if you're going to get a license from the federal government for a commercial truck driver. If it was a temporary thing, where you're going to use the truck driver for a month, you paid $100. But if it was for a year or more, it was $1,000. Suppose you had an employer who knew they were going to use those truckers for over a year, but applied for the temporary one. Wouldn't they owe the fee for the longer license or not? If you're going to use them for a year, you should pay the $1,000, not the $100. It would depend on the regulations at issue. For example, in the- It's your intent. The regulation is dependent upon what your intent is and how long you're going to use them for. The regulations, we're talking about an established duty to pay for something. So there may be consequences for violating and applying for the wrong thing, misusing the wrong thing. So my hypothetical, you would say there'd be no false claims act? I don't think there would be, unless there was a duty to go back and fix it. For example, in the ConAgra case. The duty is to pay for the visa that's applicable to the work that you know your employee's going to be performing. Of course, we say that the district court could have also dismissed this case because there are no allegations that HCL ever did unknowingly apply for the wrong visa. In these visas, there's much overlap between the types of visas. So just because a person might be eligible for an H-1B certainly doesn't mean that they weren't also eligible for a different kind of visa. If you apply for an L-1 visa, for example, when you know the employee is going to be doing, and you intend that the employee is going to be doing work that you need an H-1B visa for. Why aren't you cheating the government when you do that? You may be facing- Cheating the government out of money when you do that. Well, you may be facing consequences for having lied to the government, no doubt about it. But there's no obligation, if you apply for something, you apply for the wrong thing. There's no obligation to go back and apply for the right thing or pay for the right thing. And I just- But there's obligation to apply for the higher priced visa that you know you would need to put this employee to the work you intend to have him do, isn't there? There is no affirmative duty to apply for a visa, even if you're applying for a different visa. But there is an affirmative duty not to misrepresent what you're getting this visa from the government for. Absolutely, and that's the difference between- Your client violated that, didn't it? The allegation, of course, my client did not violate. The allegation, of course, is that they did violate the rules and knowingly applied for the wrong kind of visa. I understand that's the allegation. The question is, was there ever an affirmative obligation to pay for a visa that they never applied for? And our argument, our position is no, there's not an affirmative obligation to pay for a visa that you never applied for. There are consequences for breaking the law if you knowingly apply for the wrong visa. But the reverse false claims action is not some kind of tool to be wielded as a way of recovering damages for violations of other statutes. It's only for recovering an affirmative established obligation to pay the government. Some debt to the government that you didn't pay. Contrast this situation with that in Conagra, which they do rely on chiefly. In Conagra, there's much discussion by the court about when did the duty to pay for the replacement certificate arise? And what they come up with is that under the United States Department of Agriculture rules, the duty arose only when a major significant change to the existing certificate was needed. And it was only because that happened and then after that, the defendant concealed the fact that they did not make, that they did not pay for a new certificate. That there were major changes, but they didn't obtain a new certificate. That's why the defendant was liable in that case, because the event that triggered the obligation to pay had occurred. All right. There's no such requirement here. Thank you, Mr. Schomburg. Thank you. Okay, Mr. Koch, you have three minutes to move on. Thank you, Your Honor. Quickly on just the Conagra point and the duty with respect to the visa fees. In Conagra, the fraud at issue was the alteration of the export certificates. That happened at an existing point in time. It was only later, after an inspector reviewed the certificates, would he or she have concluded that a replacement certificate was needed. So when you look at the language of the False Claims Act, fraud that is a false record or statement material to an obligation. So there were certificates that were altered, material to an obligation to pay. Ultimately, the inspector would have concluded at least some of those certificates were needed, would have needed replacement. How do you address the argument that you served, that there's something different here, which is if they had been truthful and those visas had been rejected, there would have been another step then. They would have had to make a decision to apply for the H-1B visa. What's your response? Well, I mean, that's the fraud. They weren't truthful, and so the visas were issued. This was on the issue of established duty. They're saying it wasn't established that we would have had to pay the higher fee. We would have to make a decision, and that's a lottery system. You don't think there's a distinction there? I don't. Particularly when you think about the Conagra situation, where there are a subset of those certificates that were altered. Ultimately, a payment would have attached to them. Had they applied for the H-1B visa, they would have, while they may not have gotten 100% of the visas, they would have gotten a substantial portion of those visas. And that's why they avoided the duty to pay. It was fraud material to the obligation. What would happen if the person applies for the B-1 visa or the L-1 visa, and is concealing the information that you say was concealed. And the government then, upon that application, learns from an independent source that this is fraudulent, that they shouldn't. Before the visas are issued, learns about this and says, you can't do this. You have to go under a B-1 visa, or whatever, the H major. The H-1B visa? The H-1B visa, and that's the visa you have to apply for. And the guy says, well, it's not what I'm applying for. I'm applying for this visa. You're turning me down because it doesn't meet the qualifications. But does the government then say, well, I'm sorry, you have an obligation to buy another visa? Or can the guy just say, I'm not buying any visa, I'm leaving? Well, the point of the matter is that the B-1 visa, the employee covered by the B-1 visa is doing H-1B work in the US. That's the fraud. They apply for, seek a B-1 visa for H-1B work. And so, had they applied, they needed to apply for an H-1B visa. That visa, in many instances, would have issued. And the government at that point- In many instances, why do you qualify? It would not have automatically issued. It wouldn't have automatically issued, but in many instances it would have issued, just like the export certificates in Conagra. Just because there's some future government action that's required does not mean that this- But you're arguing that, presumably, the case seems to be that there would have been a B-1 visa, an HB-1 visa, 1B visa issued. And there's no showing that that would necessarily have occurred. Well, that's true of Conagra and the alteration of the export certificates. Not 100% of the export certificates that were altered would have required a replacement certificate, which would have kicked in. The fees. The fact of the matter is, they engaged in fraud, material to an obligation to pay. And so, that's the standard. Conagra, your honor- The consequences of them having to get the HB-1 visa is not, it hasn't arisen, I'm just, it's a next step that they would have to take. There's a next step, but that doesn't mean that the False Claims Act doesn't reach it. Because future government action, just look closely at the Conagra case, where the inspector had to inspect the goods. Also think about the fact that the second prong of the False Claims Act no longer requires a false record or statement to be made. The Conagra case didn't require anything else on the defendant's part. It may have been an inspector who had to look at the goods and determine which ones qualified or didn't qualify. But there wasn't an additional step by Conagra to make the duty owed. Whereas here, there would be an additional step of them having had applied for the H-1B visa, right? Or am I missing something? Well, I mean, but that's the fraud issue. You can't just escape it because they're saying, well, if we'd obeyed the law, then we would have had this duty. They- No, what Judge Walker pointed out, if the government rejected it, it's a crime to falsify records, that's a separate issue. But it's not like the government couldn't enforce any material misstatements. But if they say, we're denying this because we think you're going to really use these for different purposes, these workers for different purposes. They wouldn't owe the government, upon that denial, the higher fee, right? They would then have to make a choice. Am I going to pay the higher fee and go for the lottery or not? Right, but the fact of the matter is- It wasn't owed at the time. Well, but they applied for the visa, and intended to do H-1B work. But then, a B-1 visa employee is in doing H-1B work. That's what's illegal. That's the fraud. Let me get you to just walk me through the language of 3729. Okay. B3 and tell me how you think that you come under. 3729, B3, so there's someone who's H-1B liable for knowingly making, using, or causing to be made or used a false record or statement material to an obligation to pay. When you, that's prong one, under that- And why is this an obligation in your view? Because when HCL knows that the work they're intending for is avoiding that higher fee and applying for a B-1 and L-1 visa. They're finessing an obligation. They're finessing, they're making fraud material to an obligation. Bear in mind that the Conagra case doesn't say, it says that you don't have to necessarily suffer a loss. It's whether they're avoiding, they're engaging in fraud material to an obligation. That's the first instance with respect to the visa fee. The second is, under prong two, if you're avoiding an obligation without making a false record or statement, then you still are liable. When the employee comes in, having secured a B-1 visa and is doing H-1B work, there is an affirmative obligation to seek an H-1B visa. So, again, I would- And remind me where that obligation is specified, too. If you don't have the employee doing the kind of work that the visa initially requires, what requires you to go back to the- That's where the immigration regulations require. If you're doing this type of work, you have to have an H-1B visa. So if you think about the- What you're saying is that a minute ago you said you don't automatically get one. Right. You can apply for one. Correct. Correct. They give out, with all the immigrants coming in, they give out a relatively limited number of these visas. Correct. So, the obligation, no obligation to pay the higher amount arises under this. Two responses to that, Judge. It's, bear in mind, it's fraud material to an obligation. And so the Conagra case says you don't have to suffer a loss. They're engaging in fraud to sidestep it. And that's why statutory penalties, for example, would come into play. That's response number one. Response number two, also, had issued in Conagra. While not 100% of the H-1B visas would issue, a significant percentage of the visas would. You're not claiming that the government has a property interest in the H-1B visa, are you? I'm saying that there is a regulatory scheme that the government has set up. And there's a fee-based relationship between the government and, for example, HCL. Where there- This is like the Cleveland case and the other cases that say when you're in the regulatory arena, you're not really dealing in property. And property is the essence of obtaining property or not getting property that you're owing is the essence of this. In a regulatory situation, the law has been going in a different direction. Well, we're not claiming that the government has a property interest here. What we're saying is the government has set up a regulatory scheme where it requires, if someone is going to come do an H-1B, seek to do H-1B work, they need to apply for an H-1B visa. That has a higher visa fee than, for example, the L-1 and B-1 visas. If you're actually awarded the visa, if you succeed in the lottery, that's what the fees do. That's when the fees- Your other argument is that it wasn't just a false statement, alleged false statement at the time, but the ongoing use of that person in that capacity. Correct. So- There's two types of fraud at issue there. That's misconduct too. That's misconduct, right. On the separate prong. Right. If you're using that worker as an H-1B worker, then you should have paid the fee. That's exactly, that's exactly right. You're hypothesizing that because the guy's doing H-B-1 work, he would have gotten a visa, H-B-1 visa, had he applied for it. They had an obligation to seek it. An obligation to seek, but they didn't have an obligation to pay the fee by seeking. Well, but- It's not just that. It's only when you get the visa. Well, the fraud was material to an obligation in that instance. Is the fee due when you get the visa or when you apply? The fee is due when you apply, when you're accepted in a lottery. That's when the fee is due. In other words, when you get the visa, when there's nothing that impedes you from getting the visa.  Correct. But again, Conagra is directly on point here. Not 100% of the certificates that were altered would have required replacement certificates. That would not have happened. But yet still, Conagra was on the hook. They engaged in fraud material to an obligation to pay. All right, I think we understand the argument. Thank you both. Thank you. Thank you. Thank you.